Your Honor, this case is on the docket 2-18-0537 of L.S.C. Holton Jr., plaintiff's appellant, v. Android Industries Belvidere LLC, defendant's appellee. Arguing on behalf of the plaintiff's appellant, Mr. Timothy J. Lowry. Arguing on behalf of the defendant's appellee, Mr. Nicholas Johnson. Thank you. Mr. Lowry, you may proceed. Your Honor, may I please report? I am Timothy Lowry for the appellant, Dallas Holton. You know, this case makes me want to eat a piece of cake, but I know if I do, I can't still have it. It's gone. And as the Supreme Court said in Albertson, as indicated on page 10 of my opening brief, you can't have it both ways. Well, who is going to have it both ways in this case? Android would if they get their way, and so far they have. Well, how would that be? Let me just ask you this. Obviously, this involves a loaned employee and a borrowed employee arrangement, correct? There's a dispute. Can we agree on that? There's a dispute about whether he is a borrowed employee, as indicated in Section 2 of my brief. Okay, but assuming we get past that, Android would be borrowing, staff on site would be the loan, correct? Correct. As I understand your argument, your point is that you believe the exclusive remedy protection is predicated, or is a condition proceeding on an obligation to pay for the worker's compensation claims either directly or with reimbursement, correct? To pay and to have that obligation up front and to choose up front. But is there not a statute that specifically governs this arrangement? It does. Along with all the other case law, it governs this arrangement. Right, so let's talk then about the case law first. Do you have any cases involving this precise fact, a borrowed employee relationship to support your argument? And we have cases, I ordered a big case, we had another case about a joint venture, as you know. Any cases where the court held this was a borrowed employee relationship and there had to be this condition proceeding? Do you have a case precisely on point? Precisely on point, no, and that's what you also look at as in FELG, the agreement, the employer agreement, which in our case is the complete opposite of the agreement. You mean the agreement between the SOS and Android? Right, that agreement at 218 and 19 of the appendix, it is the complete opposite of what there was in FELG. Android basically has nothing to do with regard to discharging, supervision, any of that, which is the opposite of what it was in the FELG case. Who supervises the employee when they're at Android? Does site on staff have anything to do with the daily supervision of the employee? One of the factors in that section two, assuming you get past everything else, is the supervision. And in general, that supervision was by Android, but by the time of this accident, it was basically he was working on his own, he had about a one minute direction at the start of the shift. So how would site on staff have anything to do with that? They're not on site, are they? He's loaned to Android. Site on staff doesn't even have to have daily contact with him, do they? Correct. So if you have no daily contact with the worker, how could you be supervising? Well, that's one of the factors under that control test. And I would say many of those factors do not favor Android. Well, who was supervising him then? Well, he was basically on his own. He had one minute of being told what to do. But if he's not being supervised by Android and he's not being supervised by the loaning employer, no supervision? Well, there's two. Then that would be a factor that wouldn't weigh in either direction then, correct? If that was the finding, yes. The facts are, I think, undisputed. He had about a minute of direction per shift and told what to do. We get past that. I understand your argument. But, again, I'm struggling with the idea that you could be supervising somebody that you have no daily contact with. I think that's a hard sell. But let's move on to another point. Android, I mean, if they want him, an employee that's loaned to them to leave, they have the right to do that. They can tell them not to come in, right? If you look at the contract at 218, the right to discharge is with stamp on site. That's the opposite.  I agree with you. Discharge. But certainly Android, obviously, has the right to tell site and staff, we don't want this person anymore, don't they? They can tell them that. But the contract is silent as to their rights. I mean, I was a visitor there for a deposition. That same Mr. Brown could have told me to leave. And that's because there were tenants there and they had rights as a tenant to tell anybody to leave. So there's really no step up for Mr. Holton. They could tell anybody on the premises to leave. They're renting the facility along with some others. And they could tell anybody they wanted to leave. So having the ability to tell someone to leave doesn't necessarily establish control in employment, right? Okay, I understand. Your argument has two levels, whether or not who's controlling the alleged employee and whether or not there is reimbursement, whether or not this right of reimbursement is required to be able to invoke the immunity provisions of the act. But let's look at the statute itself. And this ties into your argument. You can't have your cake and eat it, too. The act says such employee, the liability of such loaning and borrowing employees is joint and several. Right? It doesn't sound like cake and eat it, too. It's joint and several. Going into this, they are both legally liable under the statute. But it goes on to say both, you know, both the borrowing employer shall be responsible for full reimbursement for all sums paid and incurred unless there is an agreement to the contrary. Here, wasn't there an agreement to the contrary? I would say no. And if you look at page 6 of my reply brief, I analyze that statute very, very carefully. And there are provisos in there. And it says in the area where you were reading, you know, with regard to talking about loaned and borrowed employers, employees, it's joint and several provided that such loaning employer, staff on site, is in the absence of an agreement to the contrary entitled to receive from the borrowing employer full reimbursement. So, and as I say on page 6, where is this right of reimbursement? It's not in the contract, the 218 and 19. It's not there. So it doesn't apply to them. How do you read the words, though? What is the purpose, then, in your mind of the language, in the absence of an agreement to the contrary? That must have some meaning. We know by well-settled hornbook law we can't just ignore language in a statute. What is meant by that language, agreement to the contrary? Provided that such loan employers in the absence of an agreement to the contrary are entitled to receive from borrowing employer full reimbursement. There's silence with regard to every document between Android and staff on site as to reimbursement rights. Well, does that then mean that Android has to reimburse staff on site when staff on site says we want reimbursement? I would say no. But, in fact, what they've done in this case, what staff on site has done, they filed their petition at 827 seeking reimbursement from, and I quote, any amount received by Hilton, and they include Android. That's not reimbursement. That's subrogation. Not strictly subrogation. Staff on site directly seeking, well, the insurance company, which steps in their shoes, has all of their rights. So they're seeking reimbursement. They joined in on the motion at 8480. They joined in on the motion, my motion for summary judgment, and responded to their summary judgment motion. That's the only way they're going to get reimbursement. If there was some right of reimbursement, it would be a lot easier for them to just say Android pays back. But here's the problem. You realize if you carry your argument out to its logical extension, you file the argument the payments or the obligation to reimburse is considered a prerequisite for the exclusive remedy provision, then that would mean that the borrowing company and the loaning company could never contract away, could never have an agreement that would be recognized. You're saying it's a matter of law. They can't do it. You have to provide reimbursement or you can't get the exclusive remedy. You're saying there are agreements. It doesn't matter what they agree upon. You can't do that. Does that make any sense? Well, I would say what makes sense is the order citing Schmidt v. Milborn, which says you can't not pay, not have a requirement to pay, and still get the benefit of exclusive remedy. You know what, I agree with you 100% in the absence of an agreement to the contrary. That's what you keep glossing over, and you have not explained what that language means. It would imply to me that they can contract for a different arrangement and say we as the loaning employer will pick up the tab for all the workers' contact. You're saying no, they can't do that. That's what you're telling us. But under these facts, there's nothing in the staff on-site android contract on that subject of reimbursement. It doesn't even, does the site on staff say that they will take care of all the workers' compensation, insurance and fees? Doesn't that agreement say that? It does, but it doesn't say anything about reimbursement. But it wouldn't have to if their coverage is covering the comp. That's the agreement to the contrary. They're joint and severally liable unless there's an agreement to the contrary. I would say no, because as in Burge, there was an allegation that they were paid. And the court in Burge said, well, this was a back-end attempt to make a payment, to reimburse. And that wasn't good enough. So when they say they will be responsible, that doesn't mean, as it might be implied to a reasonable person, that if they're going to be responsible, then they're not going to seek reimbursement for the cost. Trying to follow your question, I think what's clear on our facts is there's nothing about reimbursement. There's nothing. You're right. It doesn't mention the term reimbursement, but site on staff says they will be responsible for providing insurance and paying for it. Right. If that's the case and the work is going to be covered under a legitimate policy for that purpose, what's the difference if there's a right of reimbursement? Well, if there's a right of reimbursement, you have this balance. And as the Supreme Court talks about, this is a very delicate balance. If you paid for compensation, if you paid premiums, all right, then there's a limit on what the employer is bound to pay in any third-party liability action. What was the extent of the agreement in Burge? In Burge, there was testimony that I don't think they attached it to the opinion, but they said that there was payment later on, and that was toward the end of the opinion. And the court said that's not good enough. Right. But did the agreement in Burge talk about who was responsible for workman's compensation benefits and payments? I believe at the end of the opinion, yes, it did. Okay. Are you aware of the FALG, Fabio versus Lindu, installations case? Yes. Okay. Does that case include any discussion with respect to your threshold argument? Does that case require reimbursement to be part of the mix or no? Yes. As I indicated in my brief, it really wasn't raised there, and I presume that's because they were required, the borrowing employer was required, to put the employee on their safety and health program. So that, to me, suggests that they were paying for the worker's comp, so the issue never came up. But explicitly, the case is silent on that reimbursement. Do we know how much Android was paying staff on site? That's not in the record. You know, it was an arm's length agreement both ways, but that precise amount is not in the record. And I would say, I mean, the way it really should work is that, you know, they, for example, staff on site sought reimbursement through this lawsuit against other defendants in the case. But here, you know, the system is being turned upside down because Android is trying to prevent staff on site. But was there an agreement between staff on site and any of the other would-be defendants? No. They just had the systemic common law right of reimbursement that applies in any personal interest. So you are saying that the right of reimbursement has to be in any arrangement between a loaning and borrowing report. I mean, can you answer that question? Yes. There should be a right of reimbursement for the statute to apply. And so if both parties, good faith, arm's length, say we don't want this arrangement, you take care of this. We're satisfied. We don't want to have reimbursement. Android or staff on site doesn't care about reimbursement. Okay? You're saying the parties can't contract to do that under the law. I think they could contract to do that. But here they don't seem to. Well, now you've changed your position a little bit. I thought you said it was an absolute prerequisite to the exclusive remedy that there had to be a right of reimbursement referred to between the parties. Otherwise, somebody is getting a cake that they don't deserve. That would be Android. What if Android pays $100 an hour to staff on site and staff on site pays $50 an hour to the employee and the workman's comp premiums, et cetera, costs based upon hourly cost of $20? So Android is paying $100 an hour and staff on site is spending $70 an hour. And there appears to be gross income of $30 an hour for staff on site. And according to your claim, there should be reimbursement in addition to the $70. Or if there is an agreement to the contrary, then because it's an arm's length transaction, it would seem to be reasonable because staff on site is making $30 an hour on this employee. Well, none of those numbers are in the record. I know they aren't. But I'm arguing the glass is half empty, and you're arguing the glass is empty. Because you're claiming that because there isn't anything in the record, that reasonable hypothecation is not reasonable and shouldn't be allowed, and your hypothecation, which is speculative at best because it presumes that staff on site is actually contracting to present or provide an employee at a loss. Because supposedly there isn't any way in which staff on site supposedly has covered the costs of the workman's compensation premiums or the unemployment compensation. In this case, we just don't know if they were doing anything at a loss or at a profit, what any of those numbers are. That's true, but if it's an arm's length transaction, it's more reasonable to conclude that the costs were covered in the rate of pay that Android was giving to staff on site than not. I don't know why that would be true. Because staff on site is still in business and it's not bankrupt. Unless, of course, it does things inconsistently and based upon astronomical or astrological signs determines what the rate's going to be based upon the calendar month. I'm sure some contracts are better than others. Some may lose, some may win. We just don't know. The basic wash is, and remains, if you don't pay, you don't reimburse up front, you don't get to pick and choose when it's here or continues. If there's joint and several liability, does that mean you get a double payment? Who gets a double payment? Your client. He wouldn't get a double payment, no, because staff on site has its handout for its share of any settlement or judgment against Android. What's the point of this whole legislation? It's to require somebody, either the loaning employer or the borrowing employer, or both if they agree, to provide cap coverage. Isn't that the reason the legislature wants cap coverage on somebody's part, correct? I believe so. That would have to be. I think it can't be disputed. So if the parties in their arms-length contract provide for that, why should it make a difference if the parties say, we don't want reimbursement, we're satisfied, we'll work this out, we'll provide the coverage, and you're saying, no, no, no, can't do it. There can be no immunity unless you both remain joint and several liable, and, again, ignoring the agreement to the contrary. That seems to me to be the issue. You can finish answering the question if you'd like. So I would say, I would ask you to please look at the broad reasoning behind this delicate balance described by the Supreme Court, and it's the Schmidt v. Milburn case, which they rely on. If you don't pay and you don't reimburse up front, we don't want to have a system where people pick and choose and decide later in the game, oh, are we the employer or are we not? At 8-220, you have that letter from Android saying, he's not our employee, he's with staff on site. But in this case, to answer your question, wasn't there an agreement up front? There clearly was an agreement that referenced PAP being the responsibility of staff on site, wasn't there? That's true, yes. Okay. You'll have an opportunity to make rebuttals. Thank you. Thank you. Mr. Johnson, you may proceed. Good morning. May it please the Court. As the questions indicated in the initial argument by Mr. Lowery, the issue is the interpretation of Section 1A4 of the Workers' Com Act. As the questions indicated, the Act is very clear. The loaning employer and the borrowing employer are jointly and separately liable for any injuries suffered by the borrowed employee, and that's exactly what happened in this case. Mr. Bolton could have chose to sue Android, or make a claim in Workers' Com against Android, or make a claim against staff on site in Workers' Com, and, in fact, he did in this case. He filed a claim against Android. Android responded saying, look, staff on site kept the Workers' Com in this case. Go ahead and amend your Workers' Com claim and file against staff on site, which he did and he recovered. There's no dispute to that. Plaintiff then came back and sued Android saying, you didn't pay the Workers' Com, now you owe me also. The Section 1A4 of the Workers' Compensation Act is very clear. It's clear as legislation usually is, not to make light of it. But in the first section, it specifically says, loaning and borrowing employers are jointly and separately liable, comma. It would be nice to have a period there, but comma. And then it goes on to the next section. Actually, let's reread that section. It actually says, as to such employee, talking about the injured employee, the liability of such loaning and borrowing employers is joint and separate. So as to Mr. Holton, staff on site and Android are both jointly and separately liable. Then it has a comment. Then it talks about what happens between staff on site and Android. The rest of the section talks about that interplay between the borrowing and loaning employers. Unless there's an agreement to the contrary. Right, and it specifically says, provided that such loaning employer, staff on site, is in the absence of an agreement, it is entitled to full reimbursement from Android. It's not saying that you have to have a reimbursement agreement. It says, by the law, because staff on site was made to pay, they can go after the borrowing employer if they choose to do so. Contrary, unless there's an agreement to the contrary. So in this case, Android always remained primarily liable to Mr. Holton for his workers' comp. Android always was primarily liable. Mr. Holton could have pressed the case against Android. Android wouldn't have to pay. If Android paid, it could, under its contract, then go back to staff on site. They'd know you were responsible for it, but it doesn't matter. They still wouldn't have to pay Mr. Holton under the workers' comp. It doesn't change any scenario that he made his claim against staff on site and recovered that. The Exclusive Government Commission still applies to Android in this case. This Court's decision in Fowley, that was about two years ago, is right on point. All the other cases cited by Planker in this case do not deal with the loaning and borrowing employer relationship. Planker, in his brief and his argument, he picks some next alphabets out of the cases, about eating your cake and paying for it and stuff like that, but they're not relevant. Section 184 only applies to the borrowing-loaning-employer relationship. It doesn't apply. The statute contemplates this precise arrangement. Absolutely. Sorry. His point would be, again, carried out this logical extension, that staff on site could never have an arrangement with the, you know, borrowing employer because the statute or the law, he would say, precludes that. Does that make any sense, that you could never have an arrangement on this? It doesn't make any sense because the Cheney decision out of the court district that this court looked at in Fowley, that's the exact same scenario where, in that scenario, the loaning employer, the temporary agency, paid all the benefits, and the same argument was made there saying, well, no, the borrowing employer still has to pay us, and the court rejected that, and this court looked at the Cheney case with approval on that point. Because the statute specifically says that you can have an agreement to the contrary that says, no, you're not going to get the reimbursement, that's exactly what we have here. Interesting point on the other cases that Plaintiff cites, when they're talking about joint ventures and the apparent subsidy relationship between companies and trying to fit in the workers' comp mechanism into those types of relationships, none of those relate to any of the issues in this case, the loan employer-borrowing employer relationship. Going on to Plaintiff's point regarding the intervening petitioner, Workforce Casualty on behalf of staff on site. When this case was first opened, there were six or seven defendants named. There was a truck driver, a snow plow company, the property owner, and a few other properties. Workforce Casualty did file their workers' comp under the Workers' Act against the lawsuit and intervened because they were allowed to in that case. Nowhere in their intervening petition do they say, Android owes us anything. They just say, if Plaintiff recovers in this lawsuit, give us some of our money back. This is the standard workers' comp thing in a personal injury case. So that intervention doesn't claim that the contract is invalid. It doesn't claim that Android didn't pay his fair share. It doesn't make any of that claim. It just says, in this lawsuit, if Plaintiff recovers, give us some of our money back that we paid. What do you make of his argument that it's not clear who had the right to control the employees' workday? Right. And that's interesting. The facts are undisputed that staff on site was a temp agency. The facts are undisputed that Android called staff on site and said, send over somebody that can work here. Mr. Holton agreed to go to Android and perform work. While he was at Android, he only had two supervisors. Both of them worked at Android. The idea that he got his job, he only took five minutes of instruction, and then he did his job for eight hours, that doesn't mean that there wasn't any supervision from Android. That means he did his job as an adult should do when they get a job. You show up, you do your job for your eight hours, and you leave. You don't need constant supervision looking over you to tell you what to do. But in fact, in this case, it's interesting if you read the timeline, Mr. Holton showed up at the facility. Initially, he was working on the north side of the building. Immediately before the accident, or within a day or two, they actually moved him to the south side. They actually changed his job. He was loading engines at one point, and he was loading empty racks on the other side. But there was this control where they actually told him what part of the facility to work on on a particular day. Mr. Holton also goes through, in his testimony, he's saying on the day that he was injured, he was told to load dock number four, I think it was. So it's kind of interesting to say he wasn't under supervision when he was actually taking direction from Android to Holton. Did staff on site have any even contact with him during the normal workday? No, and that's what the evidence suggests, or the evidence shows, is that he didn't return to staff on site. Staff on site was not at the Android facility. Plinkett makes the argument that staff on site controlled all the firing decisions for Mr. Holton, who was at the scene. Android concedes, we could not fire him from his general employment. Android had no ability to fire him from staff on site. When Android did have the authority to say, staff on site, don't send this guy to us anymore, send us a different temporary employee, Mr. Holton makes the argument that says, well, the agreement doesn't say that. The agreement doesn't say Android can refuse staff on site's assignment of a person. Yeah, it doesn't say that. Mr. Brown, in his testimony, said it's pretty implied that when he sends us somebody we don't want him, we send him back. The whole idea that you can only exclude him bases on the idea that- Some things are a matter of simple logic and common sense. Obviously, Android can't fire somebody from a temporary agency. Common sense tells us that. Right. They can't tell staff and say, hey, we will decide for you who you can have in your temp agency. In a lot of appellate decisions, that type of situation is called axiomatic. It's axiomatic. We don't have to find a case file. We don't have to find an agreement. We know that as a matter of interaction between people, Mr. Holton showed up at his job at Android based on the staff on site assignment and did his job pretty obviously. It's also a matter of common sense that obviously Android is the- has the right to tell somebody to go home. It would be ludicrous to think otherwise. Absolutely. Plus, Mr. Holton worked the same shifts as all of Android's people, which is another factor to be considered. Plinkett does make the argument, Mr. Holton does make the argument, that staff on site kept all wage documents and actually paid him. This board and felony looked at that and says, it doesn't matter who pays you. If you look at the agreement in this case between staff on site and Android, it specifically says, this is how we're going to determine how much we're going to pay- you're going to- or Android's going to pay staff on site. So there was a question earlier about, well, how much was that? What was the hourly? What was the markup? If you look at the agreement, there is a markup formula, particularly for overtime hours. Mr. Brown, in his testimony, did say, all we get when you return an hour sheet to staff on site, staff on site would then bill us collectively for all the staff on site, temporary employees that we had at a particular time. So how do you summarize your position on the loan and borrowed employee under the statute and whether or not a right of reimbursement has to be built into the arrangement in order to be able to engage the immunity provisions? What's your summary on that? Right. In the fewest words possible, quite frankly, the statute recognizes a loaning employer and a borrowing employer. In this case, given the test at this point, they had already filed a five-point test with two other considerations. Android meets that test because it did have control over Mr. Holton when he was on the job. The reimbursement right is not something that has to be in writing and can definitely be waived, and in this case, it was waived by staff on site in the agreement with Android, and they never sought in any venue any reimbursement that would invalidate the agreement. If the language, unless other rights agreed, couldn't preclude the right of reimbursement, then the legislature would have said there's joint in several, the borrowing employee and loaner are jointly in several liable, end of discussion, right? Exactly. That, in his argument, would have some merit to it. Even at that point, using the words jointly in several means that the agreed party can go against either party for recovery, and he could have gone after staff on site, even if they were jointly in liable, and not ever go after Android. It doesn't mean that Android wouldn't have had exclusivity provisions under the Act. So your position is the agreement does not have to address the, I guess, subcategory of reimbursement. Simply to say one or the other parties has exclusive determination on workman's comp, that's enough. It doesn't have to go into the specific details of what a workman's comp arrangement means. Absolutely. I don't even think you need to have a written agreement between the parties. You think it could be an oral agreement? Certainly. If you have an agreement of one company giving another company an employee, and that agreement says, okay, I'll take care of the payment. But you just said says. Do you mean in writing or? No. Let's take the hypothetical, and it's an oral arrangement. And I'm company A, and I lend my employee to company B. I said, okay, you have the employee, and I'm going to pay him. I'll take the worker's comp, and he's going to work for you. If the five-part test laid out in felony is met, whether it's written or not, and during that employee date, that employee is working for the borrowing employer, and he meets the test, the supervision shows up, there's no supervisors on site, there is nothing, and there is no discussion about who pays for worker's comp. Under the Act, that employee can go after company A or B. Company A, the temporary agency, the lonely employer, would be not primarily liable, but they would still be federally liable under the Act. So it doesn't matter who the injured party, it doesn't matter which of the two employers, loaning or borrowing, that the injured party goes after. Are you saying then that both of those, the loaning and borrowing, would be able to avail this defense? Yeah, absolutely. Both parties are. Because they had an agreement or had some understanding between them as to who was going to take care of the worker's comp? No, I think that goes a step too far. You don't have to have an agreement as to who's paying for the worker's comp. I think if you're either a loaning employer or a borrowing employer, you both have the exclusionary provisions of the Act, and that's what the case law and the common law says, and the statute says. Again, as long as somebody is providing the captorships. Right. And both of them are liable to the plaintiff jointly, similarly, with the borrowing employer to be primarily liable. And then the loaning employer, the staff on site situation, they have the right to go after the other one if they pay beyond their fair share, absolutely, absence of agreement. That's the key phrase, absence of agreement. Right. Thank you for your time. Thank you. Mr. Lowery. Yes. You may proceed. Thank you. I would submit to you that one of the things that's been sort of lost here is the overall purpose as set forth by the Illinois Supreme Court with regard to the system as a whole. And the Supreme Court has stated in two of the cases I cited about how you can't pay nothing, not reimburse, and still have the protection of the Exclusive Remedy Act. Were they interpreting the statute when they made that pronouncement? Pardon? Were they interpreting this particular statute when they made that pronouncement? I believe that the statute preceded those announcements, yes. So they held the parties could not contract between themselves anything with regard to the compensation. Is that what they held? No, I don't think so. Well, that's what you're saying. You've got to have the right to reimbursement irrespective of anything else. That has to be your position. Reimbursement should be spelled out. It's not spelled out in this case. And as in the Burge case, they tried to say, well, we paid on the back end, therefore we should get exclusive remedy protection. That didn't work because the fund foundational analysis is if you don't pay, if you don't reimburse in Burge, let's say, on the front end, you don't get the protection. Why would the legislature, as long as somebody has comp insurance, as long as the injured worker has the right to receive compensation for the injuries from somebody, who cares about reimbursement? The people, well, people like my client, people like staff on site. Well, you care about reimbursement because now you've got exclusive remedy protection for staff on site. You've got exclusive remedy protection for Android. And if you look at the tort system as a whole, there's a delicate balance. And on page 11 of my opening brief, Forsythe talks about that delicate balance. You've not only upset the delicate balance in this case, but you've turned the cases on its head. You've turned the foundational principles on their head. They didn't pay. They didn't reimburse front end, back end, and they walk away. But your client had compensation, workers' comp coverage, didn't they? Minimal compensation, which is part of the balance. Part of this balance is you should be able to sue an entity that causes an injury. There are limitations. You can't sue your employer. But here, if Android gets away, there will be two employers who get protection of exclusive remedy. That's not the logic. That's not the foundational principle of the system as a whole. We have to look at the head. If what you say is true, then it would seem reasonable that the industry of temporary staffing would fold up and leave the state. I'm not clear how that would happen. They're free to make arm's length transactions. And because, as is evident in this case, the supervision came from the borrowing employer. And so if the borrowing employer is going to have to pay under the statute to reimburse the loaning employer for workman's If the borrowing employer in their right mind take on double indemnity or double liability, they would be responsible for, quote-unquote, joints and several liability to pay for the workman's comp. And your client would get another cake because then they could sue the borrowing employer, the one who is factually and in reality the one who's supervising this employee. Well, the problem here is that under the facts of our case, Android paid for nothing. You're telling me that there's a breach of contracts lawsuit out there somewhere where staff on site is suing Android for failing to pay for the employee that showed up and ultimately was injured? No. There are many benefits that staff on site and Android contracted with regard to payroll, all these other items, and one of them is worker's comp protection. But what I'm saying is under our facts, Android did not pay and did not reimburse. I mean, if reimbursement wasn't important, why would it be in any of the statutes? You have to reimburse in order to get that protection. Any questions? No. So you're suggesting then that your client would be barred from suing Android if they had simply partially paid or reimbursed site SOS? If they reimbursed SOS up front, then they would pass the first part of the test, the threshold test, as I described in my brief, then we go into the second part of the test under control of contract. There is no contract between Holton and Android, but that's another issue. Thank you. Thank you. We'll take the case under advisement. We have other cases on the call. There will be a short recess.